IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETH GRABER | : | |
| *ON BEHALF OF HERSELF AND OTHERS* | : | |
| *SIMILARLY SITUATED,* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 21-3313 |
| WESTFIELD INSURANCE COMPANY | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                             **August 23, 2024**

Plaintiff, Beth Graber, brings a putative class action against her insurer, Defendant, Westfield Insurance Company, purporting to represent herself and all similarly situated policyholders.  Plaintiff alleges that after her home was damaged in a fire, Defendant violated the clear terms of her policy with Defendant by stating that it would not pay her the full amount she alleges that she is entitled to under the policy and imposing a condition on her recovery not found in the policy.  Defendant filed a Motion to Dismiss and, in the alternative, a Motion to Strike Plaintiff's class allegations.  Plaintiff's Amended Complaint will be dismissed without prejudice because she has not sufficiently alleged a claim for breach of contract or statutory bad faith.  Plaintiff may file a second amended complaint within forty-five (45) days of the issuance of this Memorandum/Order.

**I.      BACKGROUND**

Plaintiff is the sole owner of a home in North Wales, Pennsylvania.  (Am. Compl., ECF No. 10, ¶¶ 1, 5.)  She insured the home under a policy issued by Defendant.  (*Id.*, ¶ 6; *see also* Policy, ECF No. 10-1.)  The Policy provides that Defendant would cover the "full replacement cost" of repairing damage to Plaintiff's home, without any deduction on account of depreciation

to the value of the home before the damage occurred, if Plaintiff satisfied certain conditions. (*Id.* at ¶ 9; Policy at 52 (PDF Pagination).) One of these conditions is that Plaintiff "[r]epair or replace the building with new material of a like kind and quality within a reasonable time." (*Id.* at ¶ 9; Policy at 52.) Under the Policy, until any repair or replacement was completed, Defendant would pay no more than the "actual cash value" of the damage, that is, "the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind or quality, subject to a deduction for deterioration, depreciation and obsolescence." (*Id.* at ¶ 9; Policy at 39, 53.) While the Policy states that "[t]he actual cash value of the lost or damaged property may be significantly less than its replacement cost," it does not provide any further definition of "replacement cost" or "full replacement cost." (*See* Policy at 39, 53.)

On July 5, 2020, Plaintiff's home was damaged by a fire. (Am. Compl., ¶ 13.) Plaintiff and her public adjuster/agent promptly notified Defendant of this damage. (*Id.*, ¶ 15.) On or about July 20, 2020, Defendant acknowledged that Plaintiff's claim was covered by the Policy. (*Id.* at ¶ 16.) On December 2, 2020, Defendant sent a letter to Plaintiff's public adjuster providing an overview of her claim. (*Id.* at ¶ 17; Overview Letter, ECF No. 10-2.) Defendant estimated that: (1) the total replacement/repair cost for the damage to Plaintiff's house was $524,417.20, (2) potential recoverable depreciation was $41,315.82, and (3) the actual cash value of the claim was the difference of these two amounts, or $483,101.38. (Overview Letter.) It then stated that Plaintiff was "entitled to the Potential Recoverable Depreciation or the amount you actually spent to repair or replace the items (whichever is less)" subject to Plaintiff satisfying two conditions: (1) repairing or replacing damage within 180 days of the loss or notifying Defendant of her intent to do so within 180 days of the loss and (2) submitting "a final repair bill

or purchase receipt documenting the actual cost incurred for the repairs/replacement." (*Id.*)

Finally, it stated that:

> [Defendant] will pay no more than the least of the agreed replacement cost value determined at the time of loss or the amount you actually incur to repair/replace the damaged property, subject to any applicable deductible. If the repair/replacement cost is less than the agreed replacement cost, we will only pay the difference between the incurred cost and the "actual cash value" that has already been paid to you.

(*Id.*)

Plaintiff notified Defendant of her intent to repair her home (Am. Compl., ¶ 36.) At the time that she filed the Amended Complaint, repairs to Plaintiff's home were "nearly complete" and Plaintiff expected all repairs to be completed withing ninety days. (*Id.*, ¶ 38.) Plaintiff represents that these repairs have been completed since filing the Amended Complaint and that she has spent less than the $524,417.20 agreed upon replacement cost. (Resp., ECF No. 16, at 8 n.3.)

On June 28, 2021, Plaintiff commenced a putative class action suit against Defendant in the Philadelphia Court of Common Pleas, purporting to represent:

> All persons, who have been policyholders of homeowners' insurance policies sold in the Commonwealth of Pennsylvania by Defendant (and/or its subsidiaries, affiliates and/or related entities) with Loss Settlement provisions similar to the provision found in the Policy, who have made a claim to Defendant for dwelling coverage as a result of damage caused by a covered loss, and as to whom Defendant has paid less than full replacement cost within the six years prior to the filing of this Complaint.

(Compl., ECF No. 1-1, at p. 1, ¶ 36.) She alleged that Westfield's statement in its Overview Letter that it would pay the lesser of estimated full replacement cost or the amount Plaintiff actually spent on repairs and conditioning this payment upon the submission of repair bills, purchase receipts, or contractor invoices contradicted the clear terms of her Policy. (*Id.*, ¶ 28, 58, 59.) Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(a), asserting

diversity and supplemental jurisdiction under 28 U.S.C. §§ 1332(a), 1367.  (Ntc. of Rem., ECF No 1, ¶¶ 4-5, 24-27.)  Defendant then filed a motion to dismiss.  (ECF No. 5.)

Subsequently, Plaintiff filed an Amended Complaint, mooting Defendant's first motion to dismiss.  (Am. Compl.)  In the Amended Complaint, Plaintiff seeks to represent the same class that she sought to represent her original Complaint.  (*See id.*, ¶ 45.)  Again, she asserts that the conditions Defendant imposed on the payment of withheld depreciation in its Overview Letter are contrary to the terms of her Policy.  (*Id.*, ¶¶ 29, 68-69.)  On behalf of herself and the putative class, she brings claims for breach of contract (Count 1), bad faith under 42 Pa. Cons. Stat. § 8371 (Count 2), and a declaratory judgment under 28 U.S.C. § 2201.[1]  (*See id.* at pp. 14-22.)  Presently before the Court is Defendant's (I) Motion to Dismiss Plaintiff's First Amended Complaint and, (II) in the Alternative, to Strike Class Allegations.  (MTD, ECF No. 12.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b), a Defendant may move to dismiss a complaint for, among other reasons, "(1) lack of subject-matter jurisdiction" and "(6) failure to state a claim upon which relief can be granted."  Because standing is a jurisdictional matter, a motion to dismiss for want is standing is properly brought pursuant to Rule 12(b)(1).  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A motion to dismiss pursuant to Rule 12(b)(1) may be either "facial" or "factual."  *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014).  "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ."  *Id.* at 358.  "A factual attack, on the other hand, is an argument

---

[1] In her original Complaint, Plaintiff brought these claims as well as a claim for breach of contract on behalf of herself only in connection with the Policy's coverage of her personal property.  (Compl. at pp. 19-20.)  The parties stipulated that this claim would be dismissed without prejudice.  (ECF No. 3.)

that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* In reviewing a factual attack, "the District Court may look beyond the pleadings to ascertain the facts." *Id.* On the other hand, "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Id.* Defendant brings a facial attack. (*See* MTD at 7-8.)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Ultimately, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

### III.  DISCUSSION

#### A.  Count 1: Breach of Contract

Defendant maintains that Plaintiff's breach of contract claim fails as a matter of law. Specifically, it argues that it was proper for it to withhold depreciation until Plaintiff actually completed her repairs. (*See* MTD at 9-17.) In particular, Defendant cites to *Kane v. State Farm Fire and Cas. Co.*, 841 A.2d 1038 (Pa. Super. Ct. 2003). (*Id.* at 10.) In *Kane*, the Pennsylvania Superior Court held that insurers may deduct depreciation from the replacement cost of damages to the insured property until repairs are completed, but only if the relevant policy refers to "actual cash value" as the compensation that will be provided until repairs are completed and

clearly defines the term to include a deduction for depreciation.  *See* 841 A.2d at 1042, 1047, 1049-50.  Defendant argues that its withholding of depreciation was consistent with the Policy, which clearly defines "actual cash value" to include a deduction for depreciation and expressly conditions the payment of full replacement cost on the actual repair or replacement of the damaged property.  (*See* MTD at 13-17.)

To the extent that Plaintiff takes issue with the Overview Letter, Defendant maintains that Plaintiff's claims are premature.  (*Id.* at 17-18.)  Defendant argues that Plaintiff has failed to demonstrate how the statements in the Overview Letter caused Plaintiff any harm so as to meet the injury-in-fact requirement of Article III standing.  (*Id.*)  *See also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that in order to have standing in federal court, a plaintiff must have suffered an invasion of a legally protected interest which is concrete and particularized, actual or imminent, fairly traceable to the challenged action of the defendant, and likely redressable by a favorable decision).  Defendant contends that Plaintiff's concerns amount to speculation that Defendant will possibly violate the Policy at a later point, i.e., once the repairs are completed, which is insufficient to establish standing.[2]  (*Id.* at 17-18, citing *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III.").)  In other words, because Plaintiff has no right under the Policy to withheld depreciation until she makes repairs on her home, Defendant maintains that Plaintiff cannot allege an actual injury until she makes these repairs.

---

[2] Although Plaintiff has since represented that she has completed the repairs, on a motion to dismiss, we must limit ourselves to the allegations in the Amended Complaint.  *See Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) ("At the motion-to-dismiss stage, the facts are limited to the allegations in the complaint.").  Here, the Amended Complaint was filed before Plaintiff completed repairs.  (Am. Compl., ¶ 38.)

Plaintiff counters that she has standing because she has raised a plausible claim for anticipatory breach of contract, as the Overview Letter amounted to a statement that Defendant would violate the terms of the Policy. (Resp. at 10.) Specifically, she argues that the Policy dictates that Defendant must pay the policyholder the full amount withheld as depreciation after the policyholder completes repairs and that Defendant "incorrectly and unequivocally advis[ed] that the insured is only entitled to the lesser of the 'recoverable depreciation' or the amount actually spent to repair or replace the loss." (*Id.* at 11.) Furthermore, she maintains that the Policy does not permit Defendant to condition payment of withheld depreciation on Plaintiff's submission of invoices or receipts for her repairs, even though the Overview Letter does just that. (*Id.* at 12-13.) In particular, she points out that while the Policy requires that Plaintiff submit bills and receipts to account for the value of losses to personal property, it does not require her to provide such proof for losses to her dwelling. (*Id.* at 13; *see also* Policy at 34 (requiring the policyholder to "[a]ttach all bills, receipts and related documents that justify" the claimed actual cash value for damaged personal property).)

To establish a claim for anticipatory breach of contract under Pennsylvania law,[3] a plaintiff must demonstrate "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pennsylvania Ave. Corp. v. Fed'n of Jewish Agencies of Greater Philadelphia*, 489 A.2d 733, 736 (Pa. 1985). "[M]ore than a threat of non-performance is needed before conduct can amount to an anticipatory breach of contract." *Boro Const., Inc. v. Ridley Sch. Dist.*, 992 A.2d 208, 217 (Pa. Commw. Ct. 2010). "[A]n honest disagreement over the language of an agreement" does not amount to an "absolute and

---

[3] A federal court sitting in diversity applies the substantive law of the forum state; in this case, Pennsylvania. *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020).

unequivocal refusal to perform." *Andrews v. Cross Atl. Cap. Partners, Inc.*, 158 A.3d 123, 130 (Pa. Super. Ct. 2017).

Plaintiff has not established a claim for anticipatory breach of contract.  Defendant's statements in its Overview Letter do not amount to "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *See 2401 Pennsylvania Ave. Corp.*, 489 A.2d at 736.  Nor do they even amount to a threat of non-performance. *See Boro Const., Inc.*, 992 A.2d at 217.  Rather, the dispute here can best be characterized as "an honest disagreement over the language of an agreement." *See Andrews*, 158 A.3d at 130.  Specifically, while the Policy entitles Plaintiff to the "full replacement cost" of damage to her home once she completes repairs, it does not specify whether her recovery is limited to the actual amount she spends to repair her property.  Defendant, through its Overview Letter, effectively maintains that the Policy entitles Plaintiff to the lesser of its estimate for the total cost to repair the home and the actual cost incurred by the policyholder to do so.  Plaintiff, on the other hand, contends that the Policy entitles her to the full estimated replacement cost, meaning that she is entitled to the full amount of the withheld depreciation once she completes the repairs.  Notably, she points to the fact that other policies sold by Defendant have, unlike this Policy, explicitly provide that the policyholder is entitled to the lesser of the estimated and actual replacement costs.  (*See* Am. Compl., ¶ 21; Resp. at 6-7.)  Furthermore, the Policy appears to be silent on how Plaintiff can demonstrate that she made repairs.  While Defendant maintains that Plaintiff must provide invoices and receipts in order to demonstrate that repairs were completed and thus receive the "full replacement cost," Plaintiff does not believe this to be a requirement.  The

parties' dispute ultimately amounts to one over contract interpretation.  However, that is insufficient to raise a claim of anticipatory breach of contract.[4]

Ultimately, Plaintiff's breach of contract claim is not ripe.  The doctrines of standing and ripeness are related, as both concern Article III's limitation of the jurisdiction to federal courts to "Cases" and "Controversies."  *See Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538-39 (3d Cir. 2017); *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).  However, while standing generally focuses on who is the proper party to litigate, ripeness focuses on when that party can sue.  *See id.*; *Wilderness Soc. v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996).  In order to evaluate the ripeness of a claim, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Abbott Lab. v. Gardner*, 387 U.S. 136, 149 (1967).  Notably, "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III."  *Reilly*, 664 F.3d at 42 (quoting *Whitmore v. Arkansas*, 495 U.S. 149 (1990)).

Plaintiff's breach of contract claim is not fit for judicial consideration.  This is because, based on the Amended Complaint, Plaintiff has not yet completed the condition precedent—that

---

[4] Plaintiff points to *Mitch's Auto Serv. Ctr., Inc. v. State Auto. Mut. Ins. Co.*, No. 10-3413, 2011 WL 5042480 (E.D. Pa. Oct. 24, 2011) to argue that an "insurance company withholding policy benefits by conditioning payment upon receiving contractor invoices and documentation can give rise to a breach of contract claim when there is no such condition stated in the insurance policy." (Resp. at 12-14.) In that case, the plaintiff's auto repair garage, which was covered by an insurance policy issued by the defendant, was damaged in a fire. *Mitch's Auto*, 2011 WL 5042480, at *1. The plaintiff submitted a claim under the policy and the defendant paid all claims except for an amount for withheld depreciation, "justifying its refusal on the basis of Policy provisions that allegedly require[d] the insured to first effectuate repairs and submit the receipts for actual repair costs." *Id.* The Court ultimately denied the defendant's motion for summary judgment on Plaintiff's breach of contract claim because the "[d]efendant [did] not point to any specific Policy language requiring receipts before making payment under the Replacement Cost provision." *Id.* at *5. Critically, however, this case was not one for anticipatory breach but rather concerned a standard breach of contract claim. Accordingly, *Mitch's Auto* does not support Plaintiff's anticipatory breach claim because, unlike a regular claim for breach of contract, a plaintiff must allege more than an ordinary dispute over contract interpretation to make a plausible claim anticipatory breach of contract.

is, completing the repairs to her home—that would impose the obligation on Defendant to pay her the "full replacement cost," whatever that ultimately entitles her to. *See Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 430 n.6 (3d Cir. 2012) (noting that a condition precedent is "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due"); *Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.*, 824 A.2d 1223, 1227-28 (Pa. Super. Ct. 2003) ("It is well settled that if a contract contains a condition precedent, the condition precedent must occur before a duty to perform under the contract arises.")  The Amended Complaint's breach of contract claim amounts to speculation that Defendant will not pay Plaintiff what she alleges she is entitled to under the Policy.  However, such speculation does not amount to an issue fit for judicial adjudication and does not permit this Court from deciding the parties' contractual dispute at this juncture. *See Reilly*, 664 F.3d at 42.

      Moreover, it would impose little hardship on the parties to withhold consideration at this time.  Plaintiff has represented that after filing the Amended Complaint, she completed the repairs to her home.  (Resp. at 8 n.3.)  Plaintiff's breach of contract claim will be dismissed without prejudice and Plaintiff will be granted leave to file a subsequent amended complaint, in which she may allege that she completed these repairs. *See* Fed. R. Civ. P. 12(a)(2) ("[A] party may amend its pleading [] with . . . the court's leave.  The court should freely give leave when justice so requires.").  Only when she alleges that the necessary condition precedent has been satisfied can she make a plausible claim for breach of contract.  This will also provide the parties with the opportunity to fully brief the underlying interpretive dispute—that is, whether the Policy limits Plaintiff's recovery to the amount she actually spends to repair her home and whether it requires her to submit invoices and receipts for these repairs—rather than focusing on the issue

of anticipatory breach of contract or whether withholding depreciation is proper as a matter of law. Such briefing will better position the Court to decide this case.

### B. Count 2: Statutory Bad Faith

Plaintiff also brings a claim for statutory bad faith under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371. Under that statute, a court may award certain damages to an insured against their insurer "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. Cons. Stat. § 8371. "In order to show bad faith on the part of an insurer under that statute, and insured must demonstrate that (1) the insurer did not have a reasonable basis for denying benefits under the relevant policy, and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the insured's claim." *Carr v. Travelers Home & Marine Ins. Co.*, 700 F. Supp. 3d 288, 295 (E.D. Pa. 2023) (citing *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017)). The Amended Complaint does not allege that Defendant actually denied her benefits that she is entitled to under the Policy because she had not yet completed the repairs on her home. However, given that she represents that she has since completed repairs, as with Count 1, Count 2 will be dismissed without prejudice and Plaintiff will be permitted to reallege a claim of statutory bad faith in an amended complaint.

### C. Count 3: Declaratory Judgment

In Count 3, Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201. Under that statute, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Because the Court dismisses Plaintiff's two underlying substantive claims without prejudice, it also dismisses her

declaratory judgment claim. As with Counts 1 and 2, she may plead a claim for a declaratory judgment in an amended complaint.

### D. Class Action Allegations

"[W]hen the named plaintiff lacks a cause of action, the Court should dismiss the action before proceeding to class certification." *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 210 (E.D. Pa. 2009). Accordingly, because we dismiss Plaintiffs' claims, we decline to certify Plaintiff's putative class. She may bring her class action allegations again in an amended complaint.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted and we dismiss Plaintiffs claims without prejudice. Plaintiff may file an amended complaint within forty-five (45) days of this Memorandum/Order. Accordingly, we need not address Defendant's Alternative Motion to Strike Plaintiff's class allegations under Federal Rule of Civil Procedure 12(f). An appropriate Order follows.

BY THE COURT:

*R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**